UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| TERAL SHERMAN, | | Case No. 5:22-cv-01211-SSS-JDE |
|---|---|---|
| Plaintiff, | | |
| v. | | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| JAMES S. HILL, et al., | | |
| Defendants. | | |

This Report and Recommendation is submitted to the Honorable Sunshine Suzanne Sykes, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## INTRODUCTION

On July 8, 2022, Plaintiff Teral Sherman ("Plaintiff"), an inmate at the California Institution for Men, Chino ("CIM"), proceeding pro se and in forma pauperis (Dkt. 2, 7), filed a Complaint (Dkt. 1) against Defendants M. Torres, D. Mortimer, M. Marin, K. Brown, P. Ybarra, Lamboy, T. Thomas, J. Grove, L. Vasquez, E. Santa Cruz, F. Sanchez, Blackman, and James S. Hill

(collectively, "Defendants") in their individual and official capacities under 42 U.S.C. § 1983 ("Section 1983" or "§ 1983"). Plaintiff alleges Defendants violated his rights under the Eighth, Thirteenth, Fourteenth, and Nineteenth Amendments by conspiring to falsely charge him with two disciplinary rules violations after he refused to be a "snitch" for Defendants, resulting in mental stress and the loss of 120 days of his earned credits. See Complaint at 9-14 (CM/ECF pagination).

After screening the Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), on July 29, 2022, the undersigned issued an order detailing the apparent defects with the Complaint and finding that the Complaint failed to state a cognizable claim under the First, Eighth, Thirteenth, Fourteenth, and Nineteenth Amendments, rendering it subject to dismissal. Dkt. 6 ("Screening Order"). The Screening Order provided Plaintiff various options on how to proceed, including an option to file an amended complaint attempting to remedy the defects of the Complaint. Id. at 24-26. The Screening Order also provided an option to file a "Notice of Intent to Proceed with the Complaint," and advised that "[i]f Plaintiff chooses to file such a Notice of Intent, the Court will treat the election as a statement that Plaintiff is unable or unwilling to amend the Complaint to address the defects identified, which may result in a dismissal of all claims." Id. at 25.

On August 22, 2022, Plaintiff filed a response to the Screening Order, indicating his intent to proceed with the Complaint. Dkt. 8 ("Response"). In the Response, Plaintiff contends the Complaint "clearly states facts of a [F]irst [A]mendment violation as well as other constitutional violations of retaliation because [P]laintiff refuse[s] to put his life in danger by becoming a snitch is clearly supported by prison records and supporting documents . . . ." Id. at 1 (CM/ECF pagination). He also asserts Defendants violated California Code of Regulations, Title 15, § 3313(c)(1) by "classifying and reclassifying the RVR as

2

serious, and by reclassifying to even a more serious rule violation," and claims that although his rule violation was reversed, Defendants punished him by removing him from his work assignment and rehousing him to a crowded cell where many inmates, including Plaintiff, contracted COVID-19. Id. at 1-2. Lastly, Plaintiff reasserts that Defendants engaged in an unlawful conspiracy to reclassify his rule violation. Id. at 2.

Under 28 U.S.C. § 1915A, the Court must dismiss the Complaint if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary damages from a defendant immune from such relief. For the reasons discussed below, the undersigned recommends that the Complaint be dismissed with prejudice.

## II.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

The Court summarizes the allegations in the Complaint as follows.[1]

**A.   First Rule Violation**

On December 14, 2020, Defendant Lamboy, the Rules Violation Report ("RVR") Investigating and Hearing Lieutenant, interviewed Plaintiff about his possession of tobacco in violation of CIM's rules. Complaint at 6, 12. Lamboy asked Plaintiff which correctional officer had supplied him with tobacco, but Plaintiff refused to answer, saying he was not a "snitch." Id. at 12. Lamboy warned that if Plaintiff did not tell him who had supplied the tobacco, he would classify Plaintiff's rule violation for possessing tobacco as a violation for possessing "dangerous contraband," a more serious offense. Id.  Plaintiff

---

[1] Documents cited in the Complaint are not attached. For instance, the Complaint cites several times to "supporting documents," but no such documents are attached. See Complaint at 9-10. The Complaint also references page numbers exceeding page 15, even though the Complaint is only 15 pages long. See, e.g., id. at 9 (referencing page 22), 10 (referencing pages 25-27), 11 (referencing pages 17 and 45).

3

insisted he found the tobacco on the ground and further claimed he would never put his life in danger by being a "snitch." Id.

Plaintiff alleges that later that day, Defendant Sanchez, the Facility D Security Correction Officer and Assisting Investigation Officer, retaliated against Plaintiff for refusing to be Lamboy's "snitch" by illegally classifying Plaintiff's possession of tobacco as a rule violation for possession of "dangerous contraband," in violation of Plaintiff's due process rights. Complaint at 8, 14. Plaintiff asserts Defendant Grove, the Classifying RVR Lieutenant, also illegally classified Plaintiff's rule violation as possession of "dangerous contraband," despite knowing that tobacco is only "contraband," and in doing so, violated Plaintiff's due process rights. Id. at 6, 13. Plaintiff further claims Defendant Vasquez, the RVR Reclassifying Approval Lieutenant, thereafter approved an illegal supplemental report for the RVR to retaliate against Plaintiff on behalf of Lamboy in violation of Plaintiff's due process rights. Id. at 7, 13.

The day after Lamboy interviewed Plaintiff about possessing tobacco, he ordered Plaintiff to move from a single cell to a dorm with 38 other inmates. Complaint at 12. Plaintiff, who suffers from asthma, contends this relocation put his "life in danger" by placing him at an increased risk of becoming infected with COVID-19. Id. He further alleges that within 10 days of reassignment to the new dorm, 34 of the inmates tested positive for COVID-19, causing him to live in fear of becoming sick. Id. Plaintiff also claims that around this time, Defendant Blackman, the Assignment Lieutenant for Facility D, illegally removed him from his work assignment at "HFM," apparently a reference to Healthcare Facilities Maintenance, to retaliate against him for refusing to be a "snitch" for Lamboy. Id. at 8, 14.

A month later, Defendant Thomas, the Investigation and RVR Reclassifying Lieutenant, interviewed Plaintiff outside Unit D4 in the presence

4

of Sergeants Parker and Vanfulsent and warned Plaintiff that if he did not tell him which officer had brought the tobacco into CIM, he would reclassify Plaintiff's rule violation for possession of "dangerous contraband" to the more serious violation of "accessory to any felony." Complaint at 6, 13. Plaintiff alleges Thomas followed through with this threat, as a few days later Defendant Santa Cruz, RVR Classified Approval and Revised Lieutenant, illegally reclassified the rule violation as "accessory to any felony." Id. at 7, 12-13. Lamboy later found Plaintiff guilty of this offense ("First Rule Violation"). Id. at 11-12. Plaintiff asserts Defendants reclassified the rule violation and found him guilty of the more serious offense solely because he refused to be a "snitch" for Lamboy. Id. at 13. This guilty finding resulted in a loss of 120 days of earned credit, which were later restored when Plaintiff's guilty finding was reversed. Id. at 11.

**B.    Second Rule Violation**

On February 10, 2021, nine days after Plaintiff's First Rule Violation was reversed, Defendant Marin, a correctional officer, conducted a search of Plaintiff's housing unit. Complaint at 4, 11. Plaintiff contends Defendant Brown, the Facility D Sergeant Third Watch, approved this search and the collection of evidence as the search supervisor. Id. at 5, 12. During the search, Marin approached Plaintiff's bed area and called Plaintiff over after having spoken with the officer who initially searched his bed area. Id. at 11. Plaintiff claims Marin handcuffed him within 30 seconds of conducting the search. Id. He asserts no photographs of his property or bunk area were taken as required by CIM's rules and he did not learn any contraband had been recovered until he was placed in holding following a medical drug test for needle marks. Id. Marin then drafted a RVR, characterizing Plaintiff's violation as "constructive possession." Id. The following week, Plaintiff contends Defendant Ybarra, the Lieutenant Classifier of RVR, illegally classified the rule violation as

5

"unauthorized possession" of contraband, despite knowing that "the rule of law and the facts do not support the offense," in violation of Plaintiff's liberty rights. Id. at 5, 11-12.

Plaintiff's hearing on the RVR charge of unauthorized possession of contraband commenced on May 20, 2021 and was continued to the following day because some witnesses were not present. Complaint at 9. At the hearing, only Marin testified; Plaintiff's request for Captain J. Sheppard to testify as an expert witness on evidence collection was denied. Id. After the hearing, Defendant Torres, Facility D. Lieutenant, found Plaintiff guilty of "constructive possession" of contraband ("Second Rule Violation"). Id. at 4, 9. Once Plaintiff received a final copy of the RVR, however, he learned that Torres had changed his findings from "constructive possession" to "possession" based on false evidence that Plaintiff worked at HFM at the time of the offense. Id. at 9-10. Plaintiff alleges Defendant Mortimer, the Facility D Captain, reviewed Torres's initial finding of "constructive possession" and refused to accept it, and thereafter emailed Torres, instructing him to change his finding on behalf of Lamboy. Id. at 4, 10.

Torres's guilty finding resulted in the loss of 120 days of earned credit. Complaint at 10. Plaintiff asserts Torres knew he would have been unable to assess any credit loss against Plaintiff for a finding of "constructive possession," and that a charge of "constructive possession" is ineligible for referral to the district attorney. Id. Plaintiff thus contends Torres supplied false evidence to find him guilty of actual possession to retaliate against him by keeping him in prison for an additional 120 days. Id. He further claims Mortimer refused to consider his allegations of false evidence during his appeal process for the Second Rule Violation. Id.

Plaintiff further claims the Office of Internal Affairs informed CIM's warden, Defendant Hill, of his complaint against the Defendants' retaliatory

actions on May 24, 2021, but Hill failed to take action to remedy Plaintiff's wrongful loss of 120 days of earned credit. Complaint at 8, 14.

Plaintiff now seeks "punitive damages in the amount of [$]5,000 dollars for each defendant for each day [he] was made to serve[] of the 120 days that was illegally done that has cause[d] [him] great pain and suffering that was clearly malicious[ly] done." Complaint at 15.

## III.

## STANDARD OF REVIEW

As noted, in accordance with 28 U.S.C. § 1915A(b), the Court must review the Complaint to determine whether the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint may be dismissed for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Pleadings by pro se plaintiffs are reviewed liberally and afforded the benefit of the doubt. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (as amended). However, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When reviewing a complaint to determine whether it states a viable claim, the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (per

curiam). Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8"). <u>Zixiang Li v. Kerry</u>, 710 F.3d 995, 998-99 (9th Cir. 2013). Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). Though Rule 8 does not require detailed factual allegations, at a minimum, a complaint must allege enough specific facts to provide both "fair notice" of the particular claim being asserted and "the grounds upon which [that claim] rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 & n.3 (2007) (citation omitted); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 678 (Rule 8 standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); <u>Brazil v. U.S. Dep't of Navy</u>, 66 F.3d 193, 199 (9th Cir. 1995) (holding even <u>pro se</u> pleadings "must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong"); <u>Schmidt v. Herrmann</u>, 614 F.2d 1221, 1224 (9th Cir. 1980) (upholding Rule 8 dismissal of "confusing, distracting, ambiguous, and unintelligible pleadings").

To survive screening, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). A claim is plausible when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. <u>Id.</u> Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not show "that the pleader is entitled to relief," and thus are insufficient to state a claim that is "plausible on its face." <u>Id.</u> at 678-79 (citations omitted). "Taken together, <u>Iqbal</u> and <u>Twombly</u> require well-pleaded facts, not legal conclusions . . . that 'plausibly give rise to an entitlement to relief' . . . . The plausibility of a pleading thus derives from its well-pleaded factual allegations." <u>Whitaker v. Tesla Motors, Inc.</u>, 985 F.3d 1173, 1176 (9th Cir. 2021) (quoting <u>Iqbal</u>, 556 U.S. at 679).

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. See, e.g., Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment).

## IV.
## DISCUSSION

**A.** **The Eleventh Amendment Bars Official Capacity Claims for Damages**

Plaintiff filed suit against all Defendants, except Marin, in both their individual and official capacities. Complaint at 4-8. An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Brandon v. Holt, 469 U.S. 464, 471-72 (1985); Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (as amended). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Graham, 473 U.S. at 166. Here, the Defendants are alleged to be employees of CIM, within the California Department of Corrections and Rehabilitation ("CDCR"), an arm of the State of California. Plaintiff's claims for monetary damages against state-agent Defendants in their official capacity are thus properly treated as claims

9

against the State itself. See Shilling v. Crawford, 377 F. App'x 702, 704-05 (9th Cir. 2010) (finding that suits against state officials for damages in their official capacity are "no different than suits against the state itself"); Leer v. Murphy, 844 F.2d 628, 631-32 (9th Cir. 1988) (finding that claims against the prison correctional officer, warden, and other officials in their official capacity were claims against the state). The claims against Defendants in their official capacity thus fail for the following reasons.

First, a state is not a "person" subject to liability for money damages under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). Second, the CDCR, an arm of the State of California, is immune from suit for money damages, absent waiver or other basis, under the Eleventh Amendment. See Leer, 844 F.2d at 631-32 (observing that Eleventh Amendment bars official-capacity actions for damages); Brown v. Cal. Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009). "The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)). This jurisdictional bar includes "suits naming state agencies and departments as defendants, and applies whether the relief sought is legal or equitable in nature." Id. (footnote omitted); Pennhurst State Sch. & Hosp., 465 U.S. at 100 ("This jurisdictional bar applies regardless of the nature of the relief sought."). California has not consented to civil rights suits against it in federal court. See Dittman v. California, 191 F.3d 1020, 1025-26 (9th Cir. 1999) ("California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court"); BV Eng'g v. Univ. of Cal., L.A., 858 F.2d 1394, 1396 (9th Cir. 1988). Further, Congress has not abrogated State sovereign immunity for civil rights actions.

10

See Dittman, 191 F.3d at 1026; L.A. Branch NAACP v. L.A. Unified Sch. Dist., 714 F.2d 946, 950 (9th Cir. 1983). Plaintiff's § 1983 claims for money damages against Defendants in their official capacity therefore are barred by the Eleventh Amendment. See Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam) (finding the Eleventh Amendment bars federal claims against state prison officials in their official capacities); Olney v. Hartwig, 472 F. App'x 432, 434 (9th Cir. 2012) (affirming dismissal of official-capacity claim against prison doctor under the Eleventh Amendment).

Accordingly, as the Complaint seeks monetary damages from Defendants immune from such relief, the undersigned recommends dismissing the Complaint as to all claims brought against Defendants in their official capacity.

**B.     Plaintiff's Claims Regarding the Second Rule Violation Are Not Properly Raised in This Action**

Plaintiff claims Torres, Marin, Brown, Ybarra, Mortimer, and Lamboy violated his right to liberty by finding him guilty of the Second Rule Violation based on fabricated evidence, resulting in his loss of 120 days of earned credit, to retaliate against him for refusing to be a snitch. Complaint at 4-6, 9-12. Plaintiff seeks punitive damages in the amount of $5,000 for each day of the additional 120 days he was made to serve. Id. at 15. These claims, however, are not properly raised before the Court under § 1983 and thus should be dismissed for the following reasons.

First, Plaintiff's claims as to the Second Rule Violation lie at the "core" of habeas corpus and thus must be raised in a habeas action. Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus and a civil rights complaint. See Muhammad v. Close, 540 U.S. 749, 750 (2004) (per curiam). Challenges to the validity of any confinement or to particulars affecting its duration fall within the "core" of habeas corpus. Hill v. McDonough, 547 U.S. 573, 579 (2006); Nelson v.

_Campbell_, 541 U.S. 637, 643 (2004). "[H]abeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas, and such claims may not be brought in a § 1983 action." _Nettles v. Grounds_, 830 F.3d 922, 927 (9th Cir. 2016) (en banc). "By contrast, constitutional claims that merely challenge the conditions of prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core and may be brought pursuant to § 1983 in the first instance." _Nelson_, 541 U.S. at 643; _Nettles_, 830 F.3d at 927. Thus, if success on a habeas petitioner's claim would not necessarily lead to his immediate or earlier release from confinement, the claim does not fall within "the core of habeas corpus" and thus, must be pursued under 42 U.S.C. § 1983. _Nettles_, 830 F.3d at 935 (quoting _Skinner v. Switzer_, 562 U.S. 521, 535 n.13 (2011)).

Here, Plaintiff is serving a 15-year determinate sentence.[2] As a result of the Second Rule Violation, he claims he lost 120 days of earned credit. Complaint at 11. Although Plaintiff seeks monetary damages for each day of credit lost, Plaintiff's claim lies at the "core" of habeas corpus because a reversal of the Second Rule Violation would necessarily result in a shorter prison sentence for Plaintiff by restoring his 120 days of credit. _See_ _Wilkinson v. Dotson_, 544 U.S. 74, 81-82 (2005) (finding that a prisoner's § 1983 suit is barred no matter the relief sought (money damages or equitable relief) if success in that action would necessarily demonstrate the invalidity of confinement or its duration); _Preiser v. Rodriguez_, 411 U.S. 475, 487, 500 (1973) (claims seeking restoration of good conduct time credits, which would have resulted in immediate release, fell within the traditional scope of habeas and therefore, had to be pursued in a habeas action). Indeed, Plaintiff appears

---

[2] Because, as noted below, the Court is taking judicial notice of Plaintiff's federal habeas petition, the Court acknowledges that Plaintiff is currently serving a determinate sentence of fifteen years.

to recognize this issue as he also filed a federal habeas petition challenging the Second Rule Violation in this Court. See Sherman v. Hill, Case No. 2:22-cv-04683-SSS-JDE (C.D. Cal.).[3] As such, Plaintiff's claims as to the Second Rule Violation are subject to dismissal because they are not properly before the Court in the instant civil rights action.

Relatedly, Plaintiff's claims as to the Second Rule Violation are also barred by Heck v. Humphrey, 512 U.S. 477, 487 (1994) because Plaintiff seeks monetary damages on a claim that would necessarily imply the invalidity of his prison disciplinary proceeding. In Heck, the Court held that a cause of action for damages under § 1983 concerning a criminal conviction or sentence cannot exist unless the conviction or sentence has been invalidated, expunged, or reversed. 512 U.S. at 486. The Court subsequently extended the Heck bar to § 1983 suits that would negate prison disciplinary proceedings that affect good-time credits. Edwards v. Balisok, 520 U.S. 641, 648 (1997). A prisoner's civil rights challenge to a disciplinary hearing procedure is thus barred if judgment in his favor would necessarily imply the invalidity of the resulting loss of good-time credits. Id. at 646. Here, Plaintiff does not allege the guilty finding as to the Second Rule Violation has been reversed or expunged and Plaintiff's allegations that Defendants falsified the RVR to retaliate against him would necessarily imply the invalidity of his guilty finding. See Rodriguez v. CDCR Departmental Rev. Bd., 2014 WL 7337391, at *9 (E.D. Cal. Dec. 23, 2014) (finding plaintiff's allegations related to the "blatantly false" RVRs that were filed against him, and which formed the basis for the guilty finding and resulted in his loss of credits, barred by Heck), report and recommendation adopted, 2015 WL 769717 (E.D. Cal. Feb. 23, 2015); Williams v. Woddford,

---

[3] The Court may take judicial notice of its own records and files. Fed. R. Evid. 201(b)(2); In re Korean Air Lines Co., 642 F.3d 685, 689 n.1 (9th Cir. 2011); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

2009 WL 3823916, at *2 (E.D. Cal. Nov. 13, 2009) (finding that plaintiff's claim that the RVR was retaliatory to be barred under <u>Heck</u> because "[i]f [p]laintiff were to prevail in his § 1983 claim for the retaliatory RVR, [p]laintiff's success would necessarily imply that the loss of good-time credits was invalid"). Accordingly, under <u>Heck</u> and <u>Edwards</u>, Plaintiff cannot seek monetary damages for the additional 120 days he will spend in custody (Complaint at 15) because such an award would necessarily imply the invalidity of the loss of his good-time credits. <u>See</u> <u>Wheeler v. Hodges</u>, 2014 WL 295047, at *4 (E.D. Cal. Jan. 24, 2014) (finding plaintiff cannot seek money damages for his claim that defendants falsified a rule violation report because such a claim is barred by <u>Heck</u>).

As such, the undersigned recommends dismissing Plaintiff's claims regarding the Second Rule Violation.

## C.   <u>Plaintiff Has Failed to State First and Fourteenth Amendment Claims Based on the First Rule Violation</u>

Plaintiff avers Lamboy, Sanchez, Grove, Vasquez, Thomas, and Santa Cruz violated his Fourteenth Amendment due process rights by conspiring to wrongfully reclassify his RVR of tobacco possession to a more serious offense of accessory to any felony to retaliate against him for refusing to be a "snitch" for Lamboy. Complaint at 6-8, 12-14. Plaintiff was found guilty of the more serious RVR, but his guilty finding was reversed and his lost credits were restored. <u>Id.</u> at 11. Plaintiff also claims Blackman violated his due process rights by illegally removing him from his work assignment at HFM to retaliate against him for refusing to be a snitch. <u>Id.</u> at 8, 14. Although these claims may be raised in a § 1983 action, they fail to state a claim as a matter of law.

### 1.   <u>The First Rule Violation Claims May Be Raised in a § 1983 Action</u>

Unlike Plaintiff's claims as to the Second Rule Violation, Plaintiff's claims as to the First Rule Violation do not lie at the "core" of habeas corpus

because success on these claims would not necessarily shorten the duration of Plaintiff's confinement as his lost credit already has been restored. See Nettles, 830 F.3d at 935. Nor are the claims barred by the Heck doctrine which, as noted, prohibits § 1983 actions that would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement," because the guilty finding for "accessory to any felony" has been reversed. See Lemos v. Cnty. of Sonoma, 40 F.4th 1002, 1005 (9th Cir. 2022).

2.    The First Rule Violation Claims Fail to State a Claim

Plaintiff alleges two due process violations: (1) wrongful classification of the RVR as "accessory to any felony"; and (2) wrongful termination of his work assignment. Underlying both claims is the contention that Defendants retaliated against Plaintiff because he refused to be a snitch for Lamboy. The Court thus must first determine whether Plaintiff has stated a cognizable claim of retaliation under the First Amendment before assessing the viability of Plaintiff's Fourteenth Amendment due process claims.[4]

Retaliation claims are cognizable only if they are based on a plaintiff engaging in protected First Amendment activities. Gonzales v. Fresura, 2008 WL 5246151, at *5 (E.D. Cal. Dec. 15, 2008). To state a claim for retaliation in violation of the First Amendment in the prison context, a plaintiff must allege: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

---

[4] The Complaint alleges violations under the Eighth, Thirteenth, Fourteenth, and Nineteenth Amendments and lists "retaliation" as a cause of action. Complaint at 4, 6, 7, 8, 9, 14. Retaliation, however, is most appropriately raised under the First Amendment. See Brazil v. Rice, 308 F. App'x 186, 187 (9th Cir. 2009); Edwards v. Estill, 2020 WL 6286233, at *3 (D. Nev. Oct. 26, 2020) (construing plaintiff's retaliation claims as arising under the First Amendment).

1   Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting Rhodes v.
2   Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005)). The "plaintiff must show a
3   causal connection between a defendant's retaliatory animus and subsequent
4   injury . . . ." Hartman v. Moore, 547 U.S. 250, 259 (2006). More specifically, a
5   plaintiff must show his constitutionally protected conduct was the "substantial
6   or motivating factor" for the alleged retaliatory action. See Brodheim, 584 F.3d
7   at 1271 (internal quotation marks and citation omitted).
8        At issue here is the third element, namely, whether Plaintiff's refusal to
9   be a "snitch" is constitutionally protected conduct under the First Amendment.
10   Courts in this circuit have repeatedly found that a prisoner's refusal to
11   "debrief" (or "snitch") with prison staff is not constitutionally protected
12   conduct. See Milliken v. Sturdevant, 2020 WL 2512381, at *8 (N.D. Cal. May
13   15, 2020) (finding plaintiff's retaliation claim fails because he could not show
14   his refusal to debrief was constitutionally protected (citing Resnick v. Hayes,
15   213 F.3d 443, 445 (9th Cir. 2000))); Garland v. Redding, 2016 WL 1222202, at
16   *4 (C.D. Cal. Mar. 28, 2016) (finding plaintiff failed to show how his refusal to
17   debrief is protected conduct); Dixon v. Gonzales, 2009 WL 3416005, at *3 n.1
18   (E.D. Cal. Oct. 21, 2009) (finding plaintiff failed to state a claim for retaliation
19   based upon a right not to speak (or not to "snitch") because "[c]hoosing not to
20   disclose information about possible safety and security concerns is not
21   protected conduct"), report and recommendation adopted, 2009 WL 5125612
22   (E.D. Cal. Dec. 21, 2009). Accordingly, because there is no constitutionally
23   protected right not be a "snitch," Plaintiff has failed to state a claim for
24   retaliation under the First Amendment.[5]

25   _____
26   [5] Plaintiff cites to Taylor v. Kimmel, 2020 U.S. App. LEXIS 20443 (6th Cir. June 30,
    2020) in the Response to support his claim that Defendants violated his First
27   Amendment rights by retaliating against him. Response at 1. Taylor, however, is
    inapposite here because the plaintiff in Taylor claimed defendants retaliated against
28   him for filing a grievance against a prison guard asserting that the guard exposed him

                                    16

1    Having found that Plaintiff failed to state a claim for retaliation, the
2    Court must determine whether Plaintiff's due process claims are cognizable.

3            i.    RVR Due Process Claim

4            First, as noted, Plaintiff claims Defendants violated his due process
5    rights by wrongfully classifying the First Rule Violation as "accessory to any
6    felony" to retaliate against him. The filing of a false disciplinary charge,
7    however, is not a per se due process violation. See Bland v. Rodriguez, 2020
8    WL 8515181, at *2 (E.D. Cal. June 17, 2020); Ransom v. Herrera, 2016 WL
9    7474866, at *1 (E.D. Cal. Dec. 28, 2016), report and recommendation
10   adopted, 2017 WL 1166284 (E.D. Cal. Mar. 28, 2017). Rather, to succeed on a
11   due process claim in this context, the plaintiff must show either (1) the false
12   disciplinary report was filed in retaliation for his exercise of a constitutional
13   right; or (2) the plaintiff was not afforded procedural due process in a
14   disciplinary proceeding concerning the false report. Bland, 2020 WL 8515181,
15   at *3 (citing Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997)); see also
16   Campo v. Prosper, 2009 WL 3112425, at *6 (E.D. Cal. Sept. 23, 2009)
17   (observing that "while in no way condoning 'trumped up charges' or the use of
18   'falsified documents' in any official proceeding, even the filing of false
19   disciplinary charges is not itself a due process violation" provided procedural
20   due process requirements are met (internal citation and alterations omitted)).

21   Here, Plaintiff cannot show the allegedly false RVR was filed in
22   retaliation for his exercise of a constitutional right because, as discussed above,

23   ───────────────────────────
24   to the risk of being labeled a "snitch" by questioning him in front of another inmate.
     Id. at *9. The court recognized the plaintiff had engaged in constitutionally protected
25   conduct by filing the grievance claim, and thus could proceed on a retaliation claim,
     because "an inmate has a right to file 'non-frivolous' grievances against prison
26   officials." Id. (citation and alterations omitted). Here, unlike the plaintiff in Taylor,
     Plaintiff does not claim Defendants retaliated against him because he filed a
27   grievance. Plaintiff's retaliation claim is instead predicated on his refusal to be a
     snitch, which, as noted above, is not constitutionally protected conduct.
28

one's refusal to be a snitch is not a constitutionally protected right. Nor can Plaintiff show he was not afforded adequate procedural due process as to the First Rule Violation based on his allegation that Defendants reclassified the RVR in violation of California Code of Regulations, Title 15, § 3313(c)(1), which states that "[b]efore the disciplinary hearing, the official who initially classified the RVR or a staff member at a higher level may change the classification of the RVR." See Response at 1.

Inmates subjected to prison disciplinary action are entitled to certain procedural protections under the Due Process Clause but are not entitled to the full panoply of rights afforded to criminal defendants. Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also Superintendent v. Hill, 472 U.S. 445, 456 (1985); United States v. Segal, 549 F.2d 1293, 1296-99 (9th Cir. 1977) (observing that prison disciplinary proceedings command the least amount of due process along the prosecution continuum). First, an inmate is entitled to advance written notice of the charge against him as well as a written statement of the evidence relied upon by prison officials and the reasons for any disciplinary action taken. See Wolff, 418 U.S. at 563. Second, an inmate has a right to a hearing at which he may "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566; see also Ponte v. Real, 471 U.S. 491, 495 (1985). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." Wolff, 418 U.S. at 566. Prison officials may also explain their reasons limiting an inmate's efforts to defend himself. Ponte, 471 U.S. at 497. Third, the inmate's disciplinary hearing must be conducted by a person or body that is "sufficiently impartial to satisfy the Due

Process Clause." <u>Wolff</u>, 418 U.S. at 571. Fourth, the decision rendered on a disciplinary charge must be supported by "some evidence" in the record. <u>Hill</u>, 472 U.S. at 455.

Here, to the extent Plaintiff argues in the Response that Defendants violated his due process rights by reclassifying the RVR to a more serious RVR in violation of California Code of Regulations, Title 15, §§ 3313 and 3313(c)(1), this claim fails because Plaintiff is only entitled to the procedural safeguards outlined in <u>Wolff</u>, and Plaintiff's claim premised on a violation of the state regulation concerning who is allowed to reclassify an RVR does not support a violation of a <u>Wolff</u> safeguard. <u>See</u> <u>Carter v. Flores</u>, 2017 WL 1075492, at *6 (E.D. Cal. Mar. 21, 2017) (finding plaintiff failed to state a violation of his due process rights by alleging that defendant changed plaintiff's RVR charge of "battery" to "fighting," a "Division D" offense, after plaintiff pled not guilty in violation of California Code of Regulations, Title 15, § 3313(b) because "[n]one of [p]laintiff's allegations even if true, show a violation of the standards laid out in <u>Wolff</u>").[6] Further, Plaintiff's RVR was reversed, and he did not receive any punishment as a result of the proceedings.[7] Accordingly, Plaintiff's claim that Defendants violated his due process rights by wrongfully finding him guilty for being an "accessory to any felony" is not cognizable because, even assuming Plaintiff's claims are true, the mere filing of a false RVR in these circumstances does not violate Plaintiff's constitutional rights. <u>See</u> <u>Ransom</u>, 2016 WL 7474866, at *7.

---

[6] In addition, the California Code of Regulations does not provide a legal basis for a claim under Section 1983. <u>See</u> <u>Figueroa v. Clark</u>, 2022 WL 3691441, at *10 (E.D. Cal. Aug. 25, 2022); <u>Morgan v. Doran</u>, 2007 WL 781903, at *2 (E.D. Cal. Mar. 13, 2007).

[7] To the extent Plaintiff contends in the Response that Defendants punished him by changing his work assignment and rehousing him, this argument lacks merit because these alleged "punishments" occurred before Plaintiff's RVR proceeding. Response at 2.

ii.   Work Assignment Due Process Claim

Second, Plaintiff asserts Blackman violated his due process rights by terminating him from his work assignment to retaliate against him. "The threshold question in due process analysis is whether a constitutionally protected interest is implicated." Baumann v. Arizona Dep't of Corr., 754 F.2d 841, 843 (9th Cir. 1985). The Due Process Clause does not create a property or liberty interest in prison employment. Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004). Prisoners thus have no constitutional right to have a job in prison. See Cunningham v. Bird, 2022 WL 1308261, at *1 (E.D. Cal. May 2, 2022), report and recommendation adopted, 2022 WL 2119045 (E.D. Cal. June 13, 2022). Accordingly, because Plaintiff had no constitutional right to his prison job, he did not suffer a due process violation[8] by being terminated from his job. Further, to the extent Plaintiff claims in the Response that his assignment demotion constituted an "adverse action" for purposes of his retaliation claim, whether the demotion constituted an "adverse action" is immaterial because, as discussed above, Plaintiff cannot show he was engaged in constitutionally protected conduct, which is necessary to state a retaliation claim. See Response at 2.

In sum, Plaintiff has failed to state First and Fourteenth Amendment claims as to the First Rule Violation. The undersigned accordingly recommends these claims be dismissed.

**D.   No Eighth Amendment Claim Against Lamboy Is Stated**

Plaintiff appears to claim Lamboy violated his Eighth Amendment right

---

[8] To the extent Plaintiff claims his job termination violated his Eighth Amendment right to be free from cruel and unusual punishment, this claim also fails because a prison job "is not a basic human need and the loss thereof does not give rise to an Eighth Amendment violation." Cunningham, 2022 WL 1308261, at *2 (citing Barno v. Ryan, 399 F. App'x 272, 273 (9th Cir. 2010)).

20

to be free from cruel and unusual punishment by moving him from a single cell to a dorm with 38 other inmates, thereby placing him at a heightened risk of contracting COVID-19. Complaint at 12.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. A prison official may violate a prisoner's Eighth Amendment rights when: (1) objectively, the official's act or omission is so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official acted with deliberate indifference to an inmate's health or safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)), overruled on other grounds by Castro, 833 F.3d at 1076.  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that official "must also draw the inference." Farmer, 511 U.S. at 837.

As an initial matter, the Court notes that overcrowding, by itself, is not a constitutional violation. Doty v. Cnty. of Lassen, 37 F.3d 540, 544 n.1 (9th Cir. 1994); see also Balla v. Idaho State Bd. of Corr., 869 F.2d 461, 471 (9th Cir. 1989) (finding that allegations of prison overcrowding alone are insufficient to state a claim under the Eighth Amendment). An overcrowding claim is cognizable only if the plaintiff alleges that crowding has caused an increase in violence, has reduced the provision of other constitutionally required services, or has reached a level rendering the institution no longer fit for human habitation. See Balla, 869 F.2d at 471.

Although overcrowding by itself does not amount to an Eighth Amendment violation, prison officials do have a duty to protect inmates from

21

communicable diseases. See, e.g., Helling v. McKinney, 509 U.S. 25, 33 (1993) (finding that prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease"); Andrews v. Cervantes, 493 F.3d 1047, 1050 (9th Cir. 2007) (recognizing a cause of action under Eighth Amendment and 42 U.S.C. § 1983 for alleged policy of not screening inmates for infectious diseases—HIV, Hepatitis C, and Heliobacter pylori—and for housing contagious and healthy individuals together during a known "epidemic of hepatitis C"); Maney v. Brown, 516 F. Supp. 3d 1161, 1179 (D. Or. 2021) (collecting cases recognizing prison officials' duty to protect inmates from exposure to communicable diseases under the Eighth Amendment).

As to the objective prong, "no one questions that [COVID-19] poses a substantial risk of serious harm to [prisoners]." Plata v. Newsom, 445 F. Supp. 3d 557, 559 (N.D. Cal. 2020). Plaintiff, however, has failed to allege that Lamboy subjectively "dr[e]w the inference" between (1) moving Plaintiff to a more crowded dorm, and (2) placing him at a substantial risk of serious harm by potentially exposing him to COVID-19. See Farmer, 511 U.S. at 837. Even if Lamboy moved Plaintiff to a more crowded dorm to retaliate against him, that does not show Lamboy knowingly disregarded the risk COVID-19 posed to Plaintiff. In fact, Plaintiff alleges 34 of the inmates in his dorm tested positive for COVID-19 after he moved there, which tends to show Lamboy was not subjectively aware that Plaintiff would be exposed to COVID-19 at the time he ordered the transfer. Complaint at 12; cf. Hill v. Rhude, 556 F. Supp. 3d 1144, 1153-54 (D. Nev. 2021) (allowing plaintiff's claim against correctional officer to proceed, alleging the correctional officer violated his Eighth Amendment rights by intentionally blowing air on him without a mask on while claiming to have an asymptomatic COVID-19 infection). Plaintiff has thus failed to show Lamboy acted with deliberate indifference by moving him to a more crowded dorm, and as such, cannot state an Eighth Amendment

claim against Lamboy.

As Plaintiff has failed to state a cognizable Eighth Amendment claim against Lamboy, the undersigned recommends this claim be dismissed.

**E.  Plaintiff Has Failed to State a Supervisory Capacity Claim**

Plaintiff alleges Brown and Vasquez approved the illegal conduct of their subordinates, and Hill, as warden, failed to take sufficient action to protect Plaintiff from the illegal conduct of his subordinates. Complaint at 12-14. A claim of liability premised on the theory of respondeat superior, however, is not cognizable under Section 1983. Iqbal, 556 U.S. at 677. "As with all § 1983 claims, personal participation in the retaliatory conduct, and not merely the existence of a supervisory relationship, is required to hold supervisors liable." Hill, 556 F. Supp. 3d at 1151 (footnote omitted). As such, even if the Complaint had alleged cognizable violations of the First and Fourteenth Amendments, the Complaint would nonetheless fail to state a cognizable claim against Brown, Vasquez, and Hill solely in their supervisory capacities for the following reasons.

First, as to Brown and Vasquez, Plaintiff alleges Brown, as search supervisor, approved of the search of his dorm on February 10, 2021, and Vasquez approved of a supplemental report reclassifying the First Rule Violation as "dangerous contraband." Complaint at 12-13. Although a supervisor's subsequent "ratification" of a subordinate's conduct can form the basis for liability under § 1983, the supervisor must actually approve of the subordinate's decision and the basis for it, and be the product of a "conscious, affirmative" choice to ratify the conduct in question. Price v. City of Sutherlin, 945 F. Supp. 2d 1147, 1159 (D. Or. 2013). Conclusory allegations that a supervisor had general responsibilities to review and approve his subordinates' conduct does not support a claim for liability under § 1983. See Chavez v. United States, 683 F.3d 1102, 1110-11 (9th Cir. 2012). Here, Plaintiff's

23

conclusory allegations that Defendants "approved" of their subordinates' conduct, without more, does not show that Defendants' "ratified" their subordinates' conduct as to give rise to liability under § 1983. Accordingly, Plaintiff has failed to state a claim against Brown and Vasquez.

Second, as to Hill, Plaintiff alleges that despite being informed by the Office of Internal Affairs on May 24, 2021 of Plaintiff's complaints of retaliation by prison staff, Hill took no action to prevent him from losing his earned credit. Complaint at 8, 14. To find a supervisor liable under § 1983, the plaintiff must show (1) the supervisor's own culpable action or inaction in the training, supervision, or control of subordinates; (2) his knowing acquiescence in the constitutional deprivation of which a complaint is made; or (3) his conduct that showed a reckless or callous indifference to the rights of others. Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1075 (9th Cir. 2013); see also Shafer v. City of Boulder, 896 F. Supp. 2d 915, 935 (D. Nev. 2012) (observing that to be found liable under § 1983, a supervisor must either set in motion a series of acts by others or knowingly refuse to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury). Plaintiff does not alleged that Hill participated in the retaliatory conduct, rather he appears to contend Hill should be found liable for failing to prevent the adverse effects of his subordinates' conduct. Plaintiff's conclusory allegation that Hill knew of Plaintiff's RVRs and failed to intervene, however, is insufficient to show Hill acquiesced in his subordinates' allegedly unconstitutional conduct. See Galdones v. Dep't of Pub. Safety, 2012 WL 5996714, at *5 (D. Haw. Nov. 29, 2012) (finding plaintiff failed to allege facts sufficient to show defendant was liable because plaintiff had merely alleged defendant had become aware of plaintiff's disciplinary violation but did not intervene); Velasquez v. Barrios, 2008 WL 4078766, at *11 (S.D. Cal. Aug. 29, 2008) ("An official's involvement

1   in reviewing a prisoner's grievances is an insufficient basis for relief through a

2   civil rights action."), aff'd, 473 F. App'x 773 (9th Cir. 2012). As such, Plaintiff

3   has failed to state a cognizable claim under § 1983 against Hill.

4       In sum, Plaintiff's claims against Brown, Vasquez, and Hill are

5   insufficient and subject to dismissal.

6   **F.    Plaintiff Has Failed to State a Conspiracy Claim**

7       Plaintiff generally claims Defendants conspired to retaliate against him

8   for refusing to be a snitch for Lamboy. Complaint at 4-8. To state a claim for

9   conspiracy, Plaintiff must allege specific facts showing two or more persons

10  intended to accomplish an unlawful objective causing Plaintiff harm and took

11  some concerted action in furtherance thereof. See Gilbrook v. City of

12  Westminster, 177 F.3d 839, 859-61 (9th Cir. 1999). Plaintiff thus must

13  specifically allege an agreement between Defendants to deprive him of a

14  constitutional right. Davis v. Powell, 901 F. Supp. 2d 1196, 1217 (S.D. Cal.

15  2012). Conclusory allegations of conspiracy are insufficient to state a § 1983

16  claim. Burns v. Cnty. of King, 883 F.2d 819, 821 (9th Cir. 1989) (per curiam);

17  Quiroz v. Short, 85 F. Supp. 3d 1092, 1112 (N.D. Cal. 2015).

18      Here, Plaintiff fails to allege specific facts to show Defendants had an

19  agreement to deprive him of a right as to support the existence of a conspiracy.

20  Plaintiff's conclusory allegations that Defendants conspired with one another

21  to retaliate against him are insufficient to state a claim for relief under § 1983.

22  See Claiborne v. Beebe, 2008 WL 544577, at *3-4 (E.D. Cal. Feb. 26, 2008),

23  report and recommendation adopted, 2008 WL 942661 (E.D. Cal. Apr. 7,

24  2008). Further, even assuming arguendo Plaintiff had alleged specific facts to

25  show a conspiracy amongst Defendants, because the Court has found there is

26  no underlying constitutional violation for Plaintiff's claims of retaliation,

27  Plaintiff's conspiracy allegations necessarily fail. See Lacey v. Maricopa Cnty.,

28  693 F.3d 896, 935 (9th Cir. 2012) ("Conspiracy is not itself a constitutional tort

25

under § 1983 . . . [i]t does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation.") (internal citations omitted); Quiroz, 85 F. Supp. 3d at 1112. Nor can Plaintiff claim Defendants engaged in an unlawful conspiracy by reclassifying the RVR in violation of California Code of Regulations, Title 15, §§ 3313 and 3313(c)(1) because, as prisoners do not have a stand-alone due process right to be free of false discipline charges, a violation of the state regulation here does not amount to a constitutional violation. See Response at 2; Molina v. Diaz, 2020 WL 8474859, at *7 (C.D. Cal. Apr. 17, 2020) (finding that the "fact that defendants reviewed and/or denied [p]laintiff's appeals does not render them a part of a 'conspiracy' to deny Plaintiff's rights").[9]

Accordingly, because Plaintiff has failed to state a claim of conspiracy, the undersigned recommends this claim be dismissed.

**G.   No Thirteenth and Nineteenth Amendment Claims Is Stated**

Plaintiff alleges, without explanation, that Defendants violated his Thirteenth and Nineteenth Amendments rights. Complaint at 9. Even liberally construed, the Complaint does not plausible allege any such violation.

First, the Thirteenth Amendment provides "[n]either slavery nor

---

[9] To the extent Plaintiff avers in the Response that Defendants conspired in violation of 42 U.S.C. § 1985(3) (Response at 2), this claim fails because the Complaint does not allege that Plaintiff was a member of a protected class and Defendants were motivated by racial or class-based animus to deprive him of a right. See Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980) (finding that to state a claim under Section 1985(3), "a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States"); see also RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002) (finding that a § 1985(3) claim must allege sufficient facts to show "a deprivation of a right motivated by some racial, or perhaps otherwise class based, invidiously discriminatory animus behind the conspirators' actions") (internal quotation marks omitted)).

involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII. To the extent Plaintiff claims he has been subjected to involuntary servitude on the basis he lost 120 days of earned credit, this claim fails because the "Thirteenth Amendment does not prohibit involuntary servitude as part of imprisonment for a crime." Piatt v. MacDougall, 773 F.2d 1032, 1035 (9th Cir. 1985); see also Gil v. Yates, 2012 WL 1910091, at *1, 7 (E.D. Cal. May 25, 2012) (finding prisoner failed to allege defendants violated the Thirteenth Amendment by falsely charging him with illegal possession which resulted in the revocation of prisoner's good time credits, lengthening prisoner's prison term). Plaintiff has failed to state a claim that Defendants violated the Thirteenth Amendment.

Second, the Nineteenth Amendment provides the "right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex." U.S. Const. amend. XIX. The Complaint, however, makes no mention of Plaintiff attempting to vote or being prevented from voting on the basis of his sex. As such, Plaintiff has not stated a claim for relief under the Nineteenth Amendment.

In sum, Plaintiff has failed to state a claim under the Thirteenth or Nineteenth Amendments, and as such the undersigned also recommends these claims be dismissed.

## H.   **The Court Should Decline Supplemental Jurisdiction Over Any Remaining State Law Claims**

Tn his Response, Plaintiff alleges violations of the California Code of Regulations. To the extent Plaintiff purports to assert a state law claim, it is recommended that the Court decline to exercise supplemental jurisdiction over any purported state law claims and dismiss those claims without prejudice.

When a federal court has dismissed all claims over which it has original

jurisdiction, it may, at its discretion, decline to exercise supplemental jurisdiction over remaining state law claims. 28 U.S.C. § 1367(c)(3); <u>Carlsbad Tech., Inc. v. HIF Bio, Inc.</u>, 556 U.S. 635, 639-40 (2009). As a matter of comity, due to the recommendation that the federal claims be dismissed, the Court should decline to hear any remaining state law claims. <u>Wade v. Reg'l Credit Ass'n</u>, 87 F.3d 1098, 1101 (9th Cir. 1996) (holding that "[w]here a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice").

## I.   <u>Further Leave to Amend Is Not Warranted</u>

The Court previously apprised Plaintiff of the deficiencies of his allegations and provided him an opportunity to amend the Complaint to correct those deficiencies. Plaintiff, however, declined to attempt to remedy the identified deficiencies and instead elected to proceed with his Complaint as is, despite being advised that choosing to do so could result in the dismissal of his Complaint. Accordingly, as Plaintiff chose to proceed with the Complaint knowing such action could result in the Complaint's dismissal, the undersigned recommends that the Complaint be dismissed without leave to amend. <u>See, e.g.</u>, <u>Fid. Fin. Corp. v. Fed. Home Loan Bank of S.F.</u>, 792 F.2d 1432, 1438 (9th Cir. 1986) ("The district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint."); <u>Ismail v. Cnty. of Orange</u>, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012).

### V.

### RECOMMENDATION

IT IS THEREFORE RECOMMENDED THAT the District Court issue an Order: (1) approving and accepting this Report and Recommendation; (2) dismissing Plaintiff's official capacity claims with prejudice, dismissing

Plaintiff's federal claims regarding the Second Rule Violation without prejudice, dismissing Plaintiff's remaining federal claims with prejudice, and dismissing all state law claims without prejudice to seeking relief in state court; and (3) directing that Judgment be entered dismissing this action accordingly.

Dated: September 14, 2022

JOHN D. EARLY
United States Magistrate Judge